IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-HC-2134-D

| | | |
|---|---|---|
| WILLIAM O'NEAL MCDOUGALD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ALVIN W. KELLER, Sec'y, | ) | |
| North Carolina Department of Correction, | ) | |
| | ) | |
| Respondent. | ) | |

William O'Neal McDougald ("McDougald" or "petitioner"), a state inmate, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [D.E. 1]. On August 2, 2010, respondent answered the petition [D.E. 5] and filed a motion for summary judgment [D.E. 6]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified McDougald about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 8]. On August 16, 2010, respondent moved to supplement the summary judgment motion with additional exhibits [D.E. 9]. On August 23 and September 7, 2010, McDougald filed five responses to the summary judgment motion [D.E. 10-14] and the affidavit of Teresa Spears [D.E. 15]. As explained below, respondent's motion for summary judgment [D.E. 6] is granted.

I.

The North Carolina Court of Appeals summarized the facts of this case as follows:

On 2 February 2001, at approximately 8:30 p.m., seventeen year old Patrice Ann Howes ("Howes") was babysitting for her cousin when two of her male friends from school, Jason Criswell ("Criswell") and Chris Griffith ("Griffith"), arrived. Howes had a crush on Criswell.

Criswell, Griffith, and Howes watched a birthday video on the porch. Criswell and Griffith eventually left, but returned at approximately 11:30 p.m. with Griffith's brother, Eddie, and defendant, who was over thirty years old. The four males were at Howes' house for only a short time and all but Criswell stayed outside because Howes' dog was barking at their dogs. Howes was introduced to defendant, whom she had seen around the neighborhood, but did not know. Howes informed the males that it was getting late and asked them to leave. They then left.

Next, Howes used the restroom and went to the laundry room to do some laundry. While Howes was doing her laundry, there was a knock on the back door, located in the laundry room. Howes could not determine who was at the back door, so she opened it, and found defendant there. Defendant tried to talk to Howes about Criswell, telling her that Criswell was a "jerk" and "no good." He also told her that she was better off with him, and that she was a beautiful girl who could "get anybody."

When Howes asked defendant to leave, he did not. Howes and defendant each had a hand on the back door, and when Howes attempted to push defendant back, he stepped into the house and continued to try to talk to Howes. At this point, Howes began cursing at defendant, as she was angered by the fact that he had come into the house. Defendant slapped Howes in the face, closed the back door, closed the laundry room door, picked Howes up, placed her on top of the washer, turned the lights out, and choked her. Howes was afraid that defendant was going to rape her, and "just sat there and cried."

Defendant continued to slap Howes and choke her because she still was crying. At some point he tried to hug Howes, and turned the light back on, saying, "now you can identify me to the police." He tried to turn the light off again, but Howes fought with him to keep it on. When her dog started to bark, indicating that her cousin was home, defendant opened the laundry room door, then fled through the back door.

State v. McDougald, No. COA07-993, 2008 WL 2097534, at *1 (N.C. Ct. App. May 20, 2008) (unpublished), review denied, 362 N.C. 686, 671 S.E.2d 328 (2008).

On October 2, 2001, a jury convicted McDougald of breaking and entering, second degree kidnapping, and assault on a female. Mem. Supp. Mot. Summ. J., Ex. 1 at 21 (jury verdict). On November 14, 2001, McDougald was convicted of being a violent habitual felon, and the state court sentenced McDougald to life imprisonment without parole. Id. at 26 (11/16/01 state court order).

McDougald appealed, challenging whether the state's evidence supported all the required elements of the charge of second degree kidnapping. Mem. Supp. Mot. Summ. J., Ex. 2 (petitioner's brief on appeal). On May 20, 2008, the North Carolina Court of Appeals found no error. On December 11, 2008, the North Carolina Supreme Court denied review. On October 13, 2009, McDougald filed his section 2254 petition, raising the same claim he raised on direct appeal. Pet. ¶ 12.

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state-court decision was based on an unreasonable determination of the facts in light of the

3

evidence presented in state court. See 28 U.S.C. § 2254(d). A state-court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state-court decision "involves an unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." See id. at 407; Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

McDougald claims that the state failed to present sufficient evidence to establish one element of the crime of second degree kidnapping: whether McDougald "kidnapped Patricia Howes for the purpose of terrorizing her." See Pet. ¶¶ 9(g)(6), 12 (ground one). McDougald first raised this argument on direct appeal. See McDougald, 2008 WL 2097534, at *1. The North Carolina Court of Appeals reviewed the record and found "there was substantial evidence from which a jury could conclude that defendant kidnapped Howes for the purpose of terrorizing her." Id. at *2–3.

Generally, the standard of review for a claim of insufficient evidence in a criminal case is

Case 5:09-hc-02134-D   Document 16   Filed 02/15/11   Page 4 of 7

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. See, e.g., Wright v. West, 505 U.S. 277, 295–97 (1992); Jackson v. Virginia, 443 U.S. 307, 319 (1979). However, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the appropriate inquiry is "whether a state court determination that the evidence was sufficient to support a conviction was an 'objectively reasonable' application of [the standard enunciated in] Jackson." Williams v. Ozmint, 494 F.3d 478, 489 (4th Cir. 2007) (alteration in original) (quotation omitted).

Here, there is overwhelming evidence in the record to demonstrate that McDougald intended to terrorize Howes. From his prior interaction with Howes earlier that evening, McDougald knew that Howes was in the home alone. He came to the back door of the house. When she told him to leave, he entered the house. When Howes cursed at him and asked him to leave, McDougald "slapped her, closed the doors, turned out the lights, placed her on the washing machine and proceeded to choke her." McDougald, 2008 WL 2097534, at *2. Howes cried hysterically during the assault. McDougald left by the back door only upon realizing that Howes' cousin was returning home. In sum, the court concludes that the North Carolina Court of Appeals' application of Jackson was objectively reasonable. Accordingly, this claim fails.

To the extent that McDougald attempts to challenge other aspects of his arrest or conviction in his filings in opposition to the motion for summary judgment,[1] McDougald did not present these

---

[1] Specifically, McDougald asserts: (1) challenges to evidentiary rulings by the trial court, D.E. 10-1 at 2 (petitioner's affidavit), D.E. 14 (document titled "motion to vacate\dismiss judgment and/or sentence"); (2) a claim of actual innocence, D.E. 10-1 at 2–5, D.E. 14, D.E. 15 (Spears Aff.); (3) a claim of malicious prosecution, D.E. 10-1 at 4–5; (4) a challenge to the predicate felony convictions used to secure his conviction as a violent habitual felon, D.E. 11 at 2 (document titled "motion to arrest of judgment violent habitual felon"); (5) ineffective assistance of appellate counsel, D.E. 12 (document titled "motion to grant retrial"); (6) ineffective assistance of trial counsel, D.E.

5

claims in his petition, and does not indicate whether he has ever presented them in state court. A state-prisoner habeas petitioner is required to "present the state courts with the same claim he urges upon the federal courts." Picard v. Connor, 404 U.S. 270, 276 (1971); see 28 U.S.C. § 2254(b)(1)(A). A habeas petitioner has not exhausted state-court review so long as he maintains "the right under the law of the State to raise, [in state court] by any available procedure, the question presented." 28 U.S.C. § 2254(c). This exhaustion requirement compels a habeas petitioner to "invok[e] one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Under North Carolina's appellate process, "one complete round" includes direct appeal to the North Carolina Court of Appeals and the opportunity to petition to the North Carolina Supreme Court for discretionary review, or filing a state post-conviction proceeding and petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-31, 15A-1422. The State may waive the exhaustion requirement, but such a waiver must be express. See 28 U.S.C. § 2254(b)(3).

"The exhaustion requirement applies as much to the development of facts material to a petitioner's claims as it does to the legal principles underlying those claims." Winston v. Kelly, 592 F.3d 535, 549 (4th Cir. 2010). Failure to exhaust does not, however, "prohibit a district court from considering evidence not presented to the state courts. Supplemental evidence that does not fundamentally alter the legal claim already considered by the state courts can properly be considered by a district court." Id. (alteration and quotations omitted). "The question of when new evidence 'fundamentally alters' an otherwise exhausted claim 'is necessarily case and fact specific.'" Id.

---

13 (document titled "motion to vacate \ dismiss ineffective counsel"); and (6) a challenge to the composition of the jury under Batson v. Kentucky, 476 U.S. 79 (1986), D.E. 14 at 7.

(quoting Morris v. Dretke, 413 F.3d 484, 491 (5th Cir. 2005)).

The court concludes that any additional claims raised by McDougald should be dismissed without prejudice in order to allow McDougald to pursue them in state court. In doing so, the court expresses no view on their merit. The court also expresses no view on whether McDougald has procedurally defaulted any claim under North Carolina law.

III.

In sum, the court GRANTS respondent's motion for summary judgment [D.E. 6] and motion to supplement the record [D.E. 9], and DISMISSES McDougald's application for a writ of habeas corpus [D.E. 1]. The court also DENIES a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001). The Clerk of Court shall close this case.

SO ORDERED. This 15 day of February 2011.

JAMES C. DEVER III
United States District Judge